## UNITED STATES DISTRICT COURT

## IN THE EASTERN DISTRICT OF MICHIGAN

In the matter of:

HOLLY A. CASSLER
JEFFREY A. FOUTCH,
MARK VOROBIEV, and
JODY B. KOHN, for themselves
and similarly situated Michigan
residents

           Plaintiffs,                            Case No.

v.                                            Hon.

                                            **PROPOSED CLASS ACTION**

CAVALRY SPV I, LLC,
CAVALRY PORTFOLIO SERVICES, LLC,

           Defendant(s).

_____/

## COMPLAINT AND JURY DEMAND

      NOW COME the Plaintiffs**, HOLLY A. CASSLER, JEFFREY A. FOUTCH, MARK VOROBIEV, and JODY B. KOHN** ("Plaintiffs") by and through counsel, The Law Offices of Nicholas Reyna, P.C. and Co-Counsel, The Law Offices of Brian P. Parker, P.C. and bring this action on behalf of themselves against the Defendants **CAVALRY SPV I, LLC and CAVALRY PORTFOLIO SERVICES, LLC,** ("Defendants") alleging the following:

**I.   PRELIMINARY STATEMENT OUTLINING DEFENDANTS' FALSE OWNERSHIP AFIDAVITS LACKING PERSONAL KNOWLEDGE AS PART OF COMMON PLAN/SCHEME TO SUE MICHIGAN RESIDENTS ON CITIBANK DEBT**

1.

Plaintiff brings this action for damages and injunctive relief based upon the Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* and The Regulation of Collection Practices Act (RCPA), codified at MCL 445.251 et seq.

2.

In Michigan, an Affidavit served with a lawsuit is prima facie evidence of indebtedness:

**600.2145 Open account or account stated; proof, counterclaim.**

Sec. 2145.

In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same.

3.

As part of a STATEWIDE scheme in all 83 Counties of the State of Michigan and as shown in the template State Court "CITIBANK" lawsuits at **Exhibit 1 (Cassler), Exhibit 2 (Foutch), Exhibit 3 (Vorobiev), and Exhibit 4 (Kohn),** the Defendants are mutually engaged in the filing of collection lawsuits against Michigan resident debtors utilizing "Affidavits of Claim" wherein the purported ***Affiant***:

- Possesses no personal knowledge of the information they are swearing under penalty of perjury to be aware of;

- Professes knowledge of the computerized record keeping and routine course of business procedures of creditors like Citibank, N.A. that they did not possess;

- Is upon information and belief signing Affidavits not written by the Affiant even

though the Affiant swears "I am authorized to make this affidavit for Plaintiff" and "I have access to and have   reviewed the applicable records of CPS and Plaintiff as they relate to Account, and I make this Affidavit based on information from that review" when  in reality and based upon the incorrect and inaccurate information in the Affidavit        and the complaint it is attached to, the Affidavit was not written by the Affiant as       she swears under oath to;

- Is swearing that amounts are due on the debts without a written or factual basis to make this statement under oath; and

- States that the corresponding business records have been appropriately reviewed while the actual Credit Card Agreement of the sued debtor which the affiant claims to have access to and included with the complaint was in fact not so included; and

- States that the account was purchased by Cavalry SPV I, LLC while there is no account assignment information attached to the Affidavit or Lawsuit showing that the SPECIFIC debt of the State Lawsuit Defendant was assigned or transferred in the sale of the portfolio of debts attached to the complaint; and

- There is no proof or necessary evidence in the Affidavits or attached to them that shows the SPECIFIC Account was sold to Cavalry SPV I, LLC; and

- The Defendant Affiants refer to the State Action debtors as the Defendants before a lawsuit is filed and before the Affidavit is attached to the lawsuit that is filed with the lawsuit

- In these Michigan collection cases, there is no valid assignment between Citibank and Cavalry SPV for the SPECIFIC debt the Cavalry Attorney Network signs the lawsuit for and sues upon on behalf of the Defendants.

4.

Defendants Cavalry and CPS are engaged in the STATEWIDE practice of submitting false or deceptive affidavits to state and local courts through Defendant law firms like Stillman Law and Weber & Olcese P.L.C. in order to fraudulently obtain thousands of default judgments against consumers for phantom debts or debts they do not have standing to pursue.   In fact, most if not all of the judgments procured by Cavalry are default judgments, as few consumers in similar debt collection cases take the necessary steps via litigation to adequately defend themselves.1

5.

A State Court's power to issue a final judgment such as a default judgment may only be invoked upon a foundation of admissible evidence.   In most consumer debt-collection cases, the underlying documentation concerning a purported debt has been generated by the credit-issuer's computer system, and is therefore hearsay under state law throughout the nation.   State and local courts have allowed such documentation into evidence under the limited business records

---

1 https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protectionstaff-report-repairing-broken-system-protecting/debtcollectionreport.pdf See, e.g., Abrams, Tr. V at 18 (well over 60%); Buckles, Tr. I at 24 (85%); Domestic Policy Subcommittee Minority Staff Report of the House Oversight and Government Reform Committee (Domestic Policy Minority Staff) Comment, 3-4 (80% in New York City and Massachusetts, citing Urban Justice Center, Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor, 1 (Oct. 2007), available at www.urbanjustice.org/cdp); Evans, Tr. V at 19 (70-80%); Fisher, Tr. V at 193 (70%); Groves, Tr. V at 22-3 (80- 90%); Lipman, Tr. I at 21-2 (85-90%); MFY Legal Services (MFY) Comment at 1-2 (90% of New York City debtors fail to answer in suits filed by seven largest debt collection law firms, citing MFY's 2008 report, Justice Disserved: A Preliminary Analysis of the Exceptionally Low Appearance Rate by Defendants in Lawsuits Filed in the Civil Court of the City of New York, available at http://www.mfy.org/Justice_Disserved.pdf); Moiseev, Tr. I at 21 (85-90%); Moore, Tr. IV at 18 (80% based on California Creditors' Bar Association informal survey); Neighborhood Economic Development Advocacy Project (NEDAP) Comment at 2 (75% default rate in New York City and 90% rate of failure to answer collection suit); Redmond, Tr. V at 22 (percentage is "certainly very high"); Surh, Tr. IV at 55 (95%); The Legal Aid Society, Neighborhood Economic Development Advocacy Project, MFY Legal Services, and Urban Justice Center – Community Development Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010), 8, available at

http://www.nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf (hereinafter Debt Deception) (finding among 336 collection cases brought by the 26 most litigious debt buyers in New York City that 81% of cases initially resulted in default judgments for the debt buyers); but see also Moore, Tr. IV at 151 (95% of cases that go to judgment are by default)

exception to the hearsay rule, but only so long as an affiant with personal knowledge of the credit-issuer's records has verified the specific account-level records at issue and attested to their veracity.

6.

Defendants are aware that significant inaccuracies may exist in the sale files of debts it purchases that are bought in large portfolios for pennies on the dollar while suing to collect the full amount of the debt plus attorney fees, interest, and costs.2

7.

Without sufficient account-level documentation- or access to anyone with personal knowledge of a consumer's account- the Defendants know they cannot make out a prima facie case demonstrating the existence of any of its' consumer debts to have standing or at any time in the judicial collection process through trial.

8.

Engaging in a pattern and practice of abusing the judicial system is an essential component of Cavalry's business model: Cavalry could not collect on its consumer debts any other way but through the hearsay Affidavits and false proof of debt and debt assignments to support their goal of obtaining a default judgment through their Attorney Network of attorneys like Stillman Law and Weber & Olcese on deficient pleadings that show no definitive legal proof of standing and are otherwise insufficient as proof to take to trial.

9.

---

2 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Consumer Financial Protection Bureau, The Consumer Credit Card Market (Dec. 2015); Federal Trade Commission, The Structure and Practices of the Debt Buying Industry (Jan. 2013).

The Defendants' lawsuits lack any proof or contractual basis to give the Defendants standing or to find Plaintiffs liable for a debt Cavalry never intends to prove it owns or is able to show paperwork that the CITIBANK debt is owed by the consumer in the collection lawsuit in state

court (*see Exhibits 1-4).*

## 10.

To reiterate, the described acts of the Defendants are representative of a state-wide scheme designed to eliminate the "Burden" in the Burden of Proof and deceive Michigan residents into paying a debt or being defaulted in State courts where Cavalry lacks ownership and/or proof of ownership to sue on a debt while eliminating the consumer's legal defenses with false affidavits that lack personal knowledge and perjury protections to create material and false representations to support computer template lawsuits in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (9), §1692f, § 1692d, MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).3

## 11.

Plaintiffs have suffered damages in that they must now find an attorney at great time and expense to defend against a fraudulently-initiated lawsuit and damage to their credit history and reputation by Defendants with collection attempts through bogus lawsuits that lack standing and

---

3 https://www.nclc.org/images/pdf/debt_collection/Debt-Collection-Facts-2016.pdf See, e.g., Mary Spector, "Debts,
Defaults, and Details: Exploring the Impact of Debt Collection Litigation on Consumers and Courts," 6 Va. L. & Bus. Rev. 257, 288 (2011) (77% default rate in Dallas County); Claudia Wilner and Nasoan Sheftel-Gomes, Neighborhood Economic Development Advocacy Project, Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Low Income New Yorkers (2010) (81% default rates in New York City); Federal Trade Commission, Repairing a Broken System 7 (July 2010) ("panelists from throughout the country estimated that sixty percent to ninety-five percent of consumer debt collection lawsuits result in defaults, with most panelists indicating that the rate in their jurisdictions was close to ninety percent") and 7 n.18 (collecting studies on default rates)

proof to hold her liable and Ms. Cassler is thusly entitled to a recovery against the Defendants under the FDCPA and RCPA (*Exhibit 5-8 Plaintiffs' Affidavits*).

## II. PARTIES

### 12.

Plaintiffs are each consumers residing, respectively, in Saint Clair (Cassler), Northville (Foutch), and Ann Arbor, Michigan (Vorobiev and Kohn). Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

### 13.

Defendant Cavalry SPV I, LLC is a foreign corporation located in the State of New York and a debt collector that purchases and collects large portfolios of defaulted consumer receivables under 15 U.S.C. 1692a (6) and whose principal business purpose is the collection of defaulted debts. Defendant Cavalry collects and services the debts through its servicing arm, Cavalry Portfolio Services, LLC (CPS) and local attorneys by filing collection lawsuits supported by false and hearsay Affidavits throughout the State of Michigan. Please see **Exhibits 1-4** which exemplify the template lawsuit and Affidavit filed as a collection attempt.   Cavalry has a resident agent address in Wayne County, State of Michigan.

### 14.

Defendant CPS is a servicer for Defendant Cavalry and a Foreign Corporation and debt collector of defaulted debts under 15 U.S.C. 1692a(6) and who "regularly collects or attempts to collect…debts owed or due…another" and who will sign off on collection attempts through lawsuits that use false Affidavits signed by Affiants who have no personal knowledge of the information they sign off on, the notary may be a "robo-notary" and without he Affiant swearing

to perjury consequences to collect debts throughout the 83 counties in the State of Michigan.

Please see Exhibits 1-4. CPS has a resident agent address in Wayne County, State of Michigan.

### III. JURISDICTION AND VENUE

#### 15.

Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337. This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. §1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

#### 16.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be 2:17-cv-12173-GAD-RSW Doc # 1 Filed 07/05/17 Pg. 7 of 25 Pg. ID 78 addressed separately").

#### 17.

Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

### IV. STATUTORY STRUCTURE- FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

#### 18.

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692.

19.

Plaintiffs are consumers.   Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

20.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5).

21.

Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a (6). Defendants are debt collectors.

22.

The Defendants regularly attempt to collect consumer defaulted debts alleged to be due another and are debt collectors as provided in 15 U.S.C. 1692a (6)) as the bank and credit card debts Defendants purchase are in default when obtained by all Defendants. *Bridge v. Ocwen Federal Bank, FSB*, 681 F. 3d 355 - Court of Appeals, 6th Circuit 2012.

23.

The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation.   Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

24.

Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Wallace v. Washington Mutual Bank*, 683 F.3d. 323, 327 (6th Cir. 2012), *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006).

25.

Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1) -(16). Among the *per se* violations prohibited by that section are using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

26.

Section 1692e further provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(2)** The false representation of—

**(A)** the character, amount, or legal status of any debt; or

**(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

**(9)** The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## V. REGULATION OF MICHIGAN COLLECTION PRACTICES ACT (RCPA)

27.

The Michigan Consumer Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

28.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

29.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim.

30.

Defendants are regulated agencies under the RCPA. See *Misleh* v *Timothy E. Baxter & Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp. 2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co.,* LLC, 886 F. Supp.2d 591 - Dist. Court, ED Michigan 2012.

31.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium.

32.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt.

33.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or transferor of the debt shall continue to be considered the creditor or the principal for purposes of this act.

34.

"Person" means an individual, sole proprietorship, partnership, association, or corporation. Defendants each represent regulated persons under § 445.251(g)(xi).

35.

The Defendants are violating the following RCPA subsections:

**445.252 Prohibited Acts**

(a) Communicating with a debtor in a misleading or deceptive manner, such as      using the stationery of an attorney or credit bureau unless the regulated person is an attorney or
is      a credit bureau and it is disclosed that it is the collection department of the credit bureau;

(b) Using forms or instruments which simulate the appearance of judicial process; and

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a

communication to collect a debt or concealing or not revealing the purpose of a communication
when it is made in connection with collecting a debt;

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

      (i) The legal status of a legal action being taken or threatened.
      (ii) The legal rights of the creditor or debtor.
      (iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

(n) Using a harassing, oppressive, or abusive method to collect a debt…

(q) Failing to implement a procedure designed to prevent a violation by an employee.

36.

The Plaintiff seeks Statutory Damages, ACTUAL DAMAGES, INJUNCTIVE RELIEF, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court pursuant to the FDCPA and the RCPA and all other common law or statutory regimes.

37.

The RCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

## VI. FACTUAL ALLEGATIONS

38.

In **Exhibits 1-4**, Citibank sold a large portfolio of defaulted and charged off debt to Defendant Cavalry SPV I, LLC.

39.

Defendant Cavalry purchases in bulk purportedly delinquent credit card and other accounts with little or any proof of debtor ownership. Prior to purchase, information about the relevant portfolio of alleged debts is transmitted to Cavalry SPV I, LLC in a computerized summary which CPS then collects and services through the Cavalry Attorney Network in the State of Michigan. On behalf of Cavalry, CPS then provides Michigan attorneys like Stillman Law and Weber & Olcese, P.L.C. with Affidavits and "proof" to file lawsuits to collect on the defaulted debt. **See examples of the collection lawsuits filed throughout the State of Michigan at Exhibit 1-4**.

40.

At the time Cavalry completes a purchase of the Citibank debts at a hugely discounted price, Cavalry is on notice that the electronic spreadsheet submitted to Cavalry is replete with inaccuracies and the Defendant lacks the necessary proof that buying debts for pennies on the dollar would encompass.

41.

Defendant Cavalry buys the debt through purchase agreements referenced in **Exhibits 1-4** that disavow responsibility for the accuracy of the data contained in the spreadsheet accompanying the portfolio purchase. The purchase/sale agreements of the portfolio debt purchase are never attached to the lawsuits against Michigan residents.

42.

No representations are made by the seller of the debts (Citibank) to Cavalry regarding

the accuracy of the information transferred in any sale. Defendant Cavalry, CPS, and the Attorney Network purposely leaves the purchase agreement off the Exhibits to the underlying state court complaints to avoid the evidentiary scrutiny attendant with the accuracy issues that would follow.

43.

The minimal information obtained by Defendant Cavalry through the purchase of a portfolio of consumer debts is not sufficient to establish the validity of the debt, Plaintiffs (purportedly) owing the debt to Cavalry, or the calculation of the balance claimed, and it certainly is not sufficient to support a Michigan court finding that the consumer owes the debt. Cavalry is aware of this deficiency but instructs its attorney clients like Stillman Law and/or Weber & Olcese, P.L.C. to file the lawsuit anyway whose only intent is to obtain a default and avoid standing or the burden of proof *(Exhibit 1-4).*

44.

While fully aware that it cannot demonstrate the evidentiary existence of any of the debts that it has purchased, let alone the exact amount possibly owed thereupon, Cavalry and their Defendant attorneys file "computer template" collection lawsuits with the use of false Affidavits that lack the personal knowledge and any consequences of perjury by the Affiant/Custodian that signs them. Further, the Affidavits misrepresent that the Affiant has seen or reviewed proof that Cavalry are the are owners of the debt of the SPECIFIC STATE DEBTOR (like each respective Plaintiff) and various other information that fails to provide written support or backing to the Affiant's swearing under oath (*please see Exhibits 5-9).*

45.

As the Affidavit and written paperwork attached to the lawsuits at **<u>Exhibits 1-4</u>** reveal,

Cavalry's sole intention is to avoid evidentiary scrutiny and seek default judgments without ever having had admissible prima facie evidence to substantiate its claims.

46.

Upon information and belief, at least 45% to 90% of the lawsuits that Cavalry files against

consumers like the Plaintiffs ultimately result in default judgments. This is because the vast majority of the legal actions that Defendant files go uncontested, allowing Cavalry to collect on alleged debts that either are invalid or have an improperly inflated face value.

47.

Defendant Cavalry's and CPS Affiants and Custodian of Records have not reviewed account-level documentation (from the Creditor Citibank) as nothing in the Affidavit attached to the lawsuits (*Exhibit 1-4*) states anything about the information provided or the authenticity of documents from Citibank, N.A. or attach anything corroborating their representations when the Affiant signs off on "fill in the blank" type hearsay Affidavit attached to the computer generated complaint filed in this case against each respective Plaintiff.


48.

Under MCL 600.2145 and as part of Cavalry's scheme to use materially false affidavits to obtain judgements throughout the State of Michigan, when Cavalry files the computer template lawsuit with the ***false Affidavit***, the Affidavit is deemed to be prima facie evidence of such indebtedness and then the burden of proof falls then on the debtor to prove he does not owe the debt the ***false affidavit*** wrongfully states to the debt (and defaulting Court) that he does.

49.

The hearsay representations made in the Affidavits are material because they are likely

to affect the unsophisticated consumers choice or conduct regarding how to respond to a lawsuit and are likely to mislead consumers like the Plaintiffs specifically when acting reasonably under the circumstances (*Exhibit 1-4).*

50.

Cavalry takes advantage of the fact that, under most states' civil procedure law, the public employees who oversee the default-judgment process engage in a largely ministerial function, relying upon the representations and certifications of the debt collectors and servicers like CPS who practice before the court. Given that tens of thousands of such lawsuits are filed every year, judicial system personnel would be overwhelmed if they had to investigate the validity of each and every default judgment application.

51.

There are no attached Credit Card Agreements commensurate with the actual specific debts of the state defendants being sued in the template collection lawsuits.

52.

To make up for the lack of proper proof and lack of credit card agreements, Defendants create the false Affidavit of Claim to attach to the collection lawsuit and create the false impression that Cavalry and their attorneys have a right to collect and sue the State Defendants and receive a Default Judgment

53.

Defendants file collection lawsuits against State Defendants using the computer template pleadings and false hearsay, even though there is no non-hearsay or independent proof this amount is owed to the Defendants.

54.

Defendants are filing these collection lawsuits in courts within the State of Michigan

without a certified or other properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the Specific Debt at the time of Charge-off to each successive owner and with no evidence or specific reference to the particular Debt being collected upon and the proof attached to collect on that debt.

55.

The Cavalry collection lawsuits were computer generated by rote and created by non attorney employees of Cavalry or its subsidiaries or servicers like CPS, without any meaningful or substantive review of the debtor file by any Cavalry or Stillman Attorney that signs off on the complaints." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir. 2008).

56.

Defendants' scheme and plan to both, eliminate the rights of consumers' ability to defend themselves and convince a State Court that a Default and Default Judgement is warranted on the merits of a false complaint and false and hearsay affidavit, is not complete or possible without the attorneys from Defendant Stillman signing off on the whole thing (*Exhibit A*).

57.

The wrongful acts of Defendants consisted of the use of uniform and deceptive and misleading affidavits by Defendants under MCL 600.2145. Nothing is more material to the least sophisticated consumer than how it's reaction is shaped and changed by deceptive and misleading pleadings and supporting affidavits.

58.

But for the material misrepresentations of Defendants through false affidavits and violations of the Michigan Court rules, there is no proof that Cavalry has the right to sue the

Plaintiffs specifically or the Plaintiff class generally for these credit card debts. Michigan

consumers are forced to defend themselves against a debt collector suing them with false

information under MCL 600.2145 (*Exhibits 1-4*).

59.

The vast majority of the Debt collection lawsuits CAVALRY files go unanswered by

Consumers and result in default judgments given the ready-made but false Affidavit presented to

the defaulting Court. The material misrepresentation in the Affidavits help Defendants eliminate

the "Burden" in their Burden of Proof in State Court by presenting false affidavits under MCLA

600.2145 requiring class members an increased burden of defending themselves in court against

a collector using false paperwork and attorney proof.

60.

In these Michigan collection cases, there is no valid assignment between Citibank and

Cavalry SPV for the SPECIFIC debt the Michigan Attorney Network signs the lawsuit for and

sues upon on behalf of the Defendants.   However, to constitute a valid assignment there must be

a perfected transaction between the parties which is intended to vest in the assignee a present

right in the thing assigned.   *Weston v. Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987).

61.

The Michigan Court of Appeals stated that Michigan's statute of frauds still requires that

an assignment of debt be in writing and signed with an authorized signature by the party to be

charged with the agreement, contract, or promise.   *Browbark II LP v. Bay Area Floorcovering &*

*Design, Inc. et al*. Michigan Court of Appeals Case No. 296660, Decided May 31, 2011.

62.

Here, the debt assignment(s) occur through the Cavalry "Bill of Sale and Assignment"

agreements between Cavalry and Citibank, with no evidence showing the specific assignment of

the specific debt(s) from the Original Lender to Cavalry SPV.   The state and local court

pleadings containing Cavalry's bare assertion of the sale and assignment is insufficient to

establish factual support for plaintiff's claim that it acquired the STATE defendant's account by

assignment.   See *Unifund CCR Partners v. Nishawn Riley*, Michigan Court of Appeals Case No.

287599, February 18, 2010.

63.

In violation of the FDCPA and RCPA, the material misrepresentations of the Defendants

go to the heart of the consumer's due process right to defend themselves against a lawsuit. The

actions to falsify Affidavit verifications, to have Attorneys verify pleadings they have not read

and/or that don't follow the Michigan Court Rules on pleadings is purposeful misrepresentation

on the part of Defendants to eliminate the legal rights and defenses of debtors and to prop up

false Default Judgments in Michigan Courts.

## VII. CLASS ACTION ALLEGATIONS

64.

Plaintiffs reallege the above pleadings.

65.

Plaintiffs brings this lawsuit as a class action. Plaintiffs tentatively define two classes

including all persons in the State of Michigan who, during the one year (FDCPA) and six years

(RCPA) prior to the filing of this complaint were the victims of "Cavalry Affidavits" supporting

collection lawsuits by Defendants in violation of Federal and State law.

66.

The FDCPA Class consists of all persons with a Michigan address that are subject to the

the Defendants collection lawsuits in violation of § 1692e, § 1692e (10), 1692e (5), § 1692e (2)(A)

1692e (9), § 1692f and §1692d.

67.

The RCPA Class consists of all persons with a Michigan address that have received Defendant collection lawsuits in violation of MCLA 445.252(n), MCLA 445.252(e), MCL 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).

68.

There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with the collection of a debt violates the FDCPA and RCPA.

69.

There are no individual questions here. All Michigan class members receive the same or similar "Cavalry Affidavits" and "Cavalry/CPS Network Lawsuits" with false robo-notarized signatures and debt assignments filed in violation of the FDCPA and RCPA.

70.

Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to vigorously litigating this matter. They are greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, they have retained counsel experienced in litigating the FDCPA and RCPA, consumer advocacy and class claims. Neither Plaintiffs nor their counsel has any interests which might cause them to not vigorously pursue this claim.

71.

Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories out of **Exhibits 1-4.**

72.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who are subject to this practice and policy of Defendant undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are $1,000. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

73.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)     The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

(b)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

74.

There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.   The predominant questions are:

a.  Whether defendants had a practice of using "CPS Affidavits" and "Cavalry/CPS Lawsuits" with robo-signed notaries and false Affiant verifications and no debt assignment proof against Michigan residents in violation of the FDCPA without meaningful file or case review by the Network Attorneys.

b.  Whether doing the above violated the FDCPA and RCPA.

75.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

76.

Plaintiffs request certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

## VIII. CLAIMS FOR RELIEF

### Count 1-Fair Debt Collection Practices Act

77.

Defendant has violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.  Defendant violated 15 U.S.C. 1692e   and 1692e(10) by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt using the collection methods exemplified by *Exhibits 1-4* which are material to due process and the response of the consumer who is being sued under MCL 600.2145 with false documentation and verifications that but for the material misrepresentations, the Consumer would have a less burdensome or better defense to the lawsuit including the  Affirmative Defense of "lack of ownership" "no assignment or sale of the debt" and other defenses the consumer believes she does not have because of the false documents used by Defendants; and

b.  Defendants collected on the debt and violated 15 U.S.C. 1692f (1) by designing and furnishing the "Affidavits" at *Exhibit 1-4* knowing that such a format would be used to

create the false belief in the Plaintiffs and Michigan Courts that a lawsuit was supported

by a legally notarized Affidavit when in fact, such is not the case as stated above; and

c.    Defendant Attorneys seek to collect on the debt and violated 15 U.S.C. 1692f

(1) with no proof, chain of title or transfer, authorization or card holder agreement to

collect any amount, interest, fee or any charges on the false "CAVALRY Affidavits" and

"CAVALRY Lawsuits" (*Exhibit 1-4*); and

d.    Defendants collected on the debt and violated 15 U.S.C. 1692e (5) by designing and

furnishing false and hearsay "Affidavits" at *Exhibits 1-4* to falsely accuse, threaten and

sue the Plaintiffs without the necessary proof and in violation of both the FDCPA and

applicable Michigan Court Rules; and

e.    The Defendants violated 15 U.S.C. §1692e(2)(A) in falsely representing that a collection

lawsuit and judgment is falsely supported by the "CAVALRY Affidavit" as stated above;

and

f.    The Defendants violated 15 U.S.C. §1692e(9) by creating and verifying false Affidavits

to have the Plaintiffs believe that the Affidavits are legal process or certified by a Court

by naming Plaintiffs and Defendants that did not exist at the time the parties were named

along with information in a lawsuit and affidavit to create the false belief that the

documents were properly notarized and/or authorized by attorneys following the

Michigan Court Rules to fool the Plaintiffs into believing Defendants were authorized to

sue them and that they owned the debt that was the basis of the lawsuit and Affidavit as

stated above (*Exhibit 1-4);* and

g.    Defendants collected on the debt and violated 15 U.S.C. 1692d by designing and

furnishing false "Cavalry Affidavits" and lawsuits (collection attempts) to

abuse and harass Michigan Consumers into paying a debt to Defendants based on that

false proof in violation of the Michigan Court Rules in pleading and verification; and

h.     Defendant Cavalry and Defendant Attorneys violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (3) by approving and verifying false lawsuits and false affidavits where there is no meaningful involvement by the attorney other than signing something the attorney has not read or had a meaningful involvement of the specific file the Plaintiffs as stated above.

**Wherefore**, Plaintiff seeks judgment against Defendant for:

a.     Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B). **<u>Please see Exhibit 5-8 regarding damages</u>**; and

b.     Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3) with a judicial review; and;

c.     Actual Damages in the form of the required elevated responses, stress, and out of pocket costs of having to respond to a false debt collection lawsuit under MCL 600.2145); and

d.     Such further relief as the court deems just and proper

### Count 2-Michigan Collection Practices Act

78.

Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.     Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using Exhibits 1-4 as mentioned above;

b.     Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt at (*Exhibits 1-4);* and

c. Defendants violated MCLA 445.252(f) Misrepresenting in a communication with a debtor 1 or more of the following:

  (i) The legal status of a legal action being taken or threatened.

  (ii) The legal rights of the creditor or debtor at (*Exhibit A*);

d. Defendants violated MCLA 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee by continuing to seek unauthorized advances not authorized under the mortgage contract of Michigan Consumers for six years through forms (*Exhibits 1-4); and*

e. Defendants violated MCLA 445.252(b) by creating documents designed to simulate the appearance of judicial process or appearance (*Exhibits 1-4)* and

f. Defendants violated MCLA 445.252(a) by communicating with debtors in a deceptive manner (*Exhibit 1-4).*

 **Wherefore**, Plaintiffs seeks judgment against Defendants for:

a. Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful violation, pursuant to M.C.L. 445.257(2);

b. Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but not limited to, a declaration that defendant's debt collection practices violated the RCPA, as well as an injunction, enjoining Defendants from using (*Exhibits 1-4*) which violates Michigan law; and

c. Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial sanction.

d. Actual Damages in the form of the required elevated responses, stress, and out of pocket costs of having to respond to false debt collection lawsuits under MCL 600.2145 (*Exhibit 5-8*).

## IX. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

November 1, 2017

/s/ Nicholas A. Reyna
NICHOLAS A. REYNA (P68328)
Primary Attorney for Plaintiff
528 Bridge St. Suite 1A
Grand Rapids, MI 48076
nickreyna7@hotmail.com>

/s/Brian P. Parker
BRIAN P. PARKER (P48617)
Co-Counsel Attorney for Plaintiff
4301 Orchard Lake Road, STE 180-208
West Bloomfield, MI 48323
(248) 342-9583
brianparker@collectionstopper.com